J-S47006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZACHARY ZANE MOORE | : | |
| | : | |
| Appellant | : | No. 1278 WDA 2017 |

Appeal from the Judgment of Sentence May 25, 2017
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000807-2016

BEFORE:   OLSON, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                 **FILED OCTOBER 19, 2018**

Appellant, Zachary Zane Moore, appeals from the judgment of sentence entered on May 25, 2017, as made final by the order memorializing the withdrawal of Appellant's post-sentence motion on August 25, 2017.  We affirm.

The Commonwealth charged Appellant with drug delivery resulting in death, possession of a controlled substance with the intent to deliver (PWID), criminal use of a communication facility, and possession of a controlled substance.[1]  **See** Commonwealth's Amended Information, 1/27/17, at 1-2.  On February 6, 2017, Appellant proceeded to a jury trial on the charges.

During trial, the Commonwealth presented the testimony of Desirea Champeno.  Ms. Champeno testified that, in December 2015, she was dating

_____

[1] 18 Pa.C.S.A. § 2506(a), 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 7512(a), and 35 P.S. § 780-113(a)(16), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

Jason Weyandt; Mr. Weyandt is the father of the decedent, Jacob Wills (hereinafter "the Decedent"). Ms. Champeno testified that, on the night of December 14, 2015, the Decedent had an argument with his girlfriend; the Decedent asked Ms. Champeno to pick him up in her car and let him sleep over her house for the night. N.T. Trial, 2/6/17, at 93-94. Ms. Champeno acceded and picked the Decedent up in her vehicle around midnight. *Id.*

Ms. Champeno testified that, when the Decedent got into her vehicle, she could tell that the Decedent "was on some type of substance" and that he was "high." *Id.* at 96. The Decedent asked Ms. Champeno to let him use her cell phone. Ms. Champeno gave him her phone and listened as he called Appellant. *Id.* at 97. At the time, Ms. Champeno knew the Decedent "had a problem with heroin" and knew he was calling Appellant "to get more heroin." *Id.* at 75 and 98. Moreover, at trial, the Commonwealth presented a text from Appellant's phone to Ms. Champeno's phone. The text declared: "you need bun 75?" *Id.* at 98. Ms. Champeno testified that this text meant that Appellant was willing to sell the Decedent "a bundle of heroin for . . . $75." *Id.* at 99.

Ms. Champeno testified that she watched the Decedent organize the money in her car. The Decedent, however, started losing consciousness and, at this point, Appellant telephoned. Ms. Champeno testified that she answered the phone and spoke to Appellant. She testified:

> [Appellant] wanted to talk to [the Decedent] but I said I can't get him up and he was scaring me and I said he's nodding out, which means he's, you know, losing consciousness and

> [Appellant] said – he asked where I was.  I told him at the gas pumps at Sheetz and he said hold on, I'll be right there.

*Id.* at 102.

As Ms. Champeno testified, Appellant arrived shortly thereafter and helped her with "making sure [the Decedent] was all right and breathing and stuff." *Id.* at 103.  She testified:

> [Appellant] took – I didn't know [the Decedent] when he was passed out he had the money in between his legs on his lap and [Appellant] took the money out of his lap and then took a little scale on the dash of the truck and started weighing out the heroin right there on the dash of the truck.
>
> . . .
>
> So then he asked me for something to put it in. . . .  I had some sandwich bags because it was a work truck, you know, behind the seat so I got him a sandwich bag to put it in and then he stuck it in the sandwich bag and I believe he laid it on [the Decedent's] lap.

*Id.* at 103-104.  Ms. Champeno then placed the heroin inside of her purse. *Id.* at 104.

After the transaction, Ms. Champeno drove the Decedent to her house and helped the Decedent walk inside; the Decedent woke up, spoke with Ms. Champeno, and began to "sober up." *Id.* at 116.  At approximately 1:23 a.m., the Decedent called Ms. Champeno and asked that she give him the heroin that he purchased from Appellant. *Id.* at 116 and 118.  Ms. Champeno gave him the heroin from her purse. *Id.* at 117.

Ms. Champeno testified that she checked on the Decedent throughout the night and early morning and, at all times, the Decedent was speaking to his girlfriend on his cell phone. *Id.* at 118-119. As Ms. Champeno testified:

> between 9:00 and 9:30 [on the morning of December 15, 2015, the Decedent came] in and woke me up . . . and he told me he just did the whole bag, like everything he had gotten off [Appellant]. . . . He's like yeah, he did all of it at once, you know, and I was like, you know, why would you do that and he was worried.

*Id.* at 119.

Ms. Champeno testified that she told the Decedent to sit down, so that she could "go to the bathroom and get ready because [she] was going to take him in" to group therapy. *Id.* at 120-121. However, when she got out of the bathroom, she noticed that the Decedent was not breathing. *Id.* at 121-122. She called 911 and emergency responders attempted to resuscitate the Decedent. *Id.* at 122-123. They could not do so and the Decedent was later pronounced dead at the hospital. *Id.* at 209. A later autopsy revealed that the Decedent's death was caused by "a drug overdose from heroin." *Id.* at 211.

The jury found Appellant guilty of PWID, possession of a controlled substance, and criminal use of a communication facility; however, the jury found Appellant not guilty of drug delivery resulting in death. N.T. Trial, 2/8/17, at 59. On May 25, 2017, the trial court sentenced Appellant to serve a term of 48 to 96 months in prison for the PWID conviction and to serve a consecutive term of 24 to 48 months in prison for the criminal use of a

communication facility conviction, for an aggregate term of six to 12 years in prison. N.T. Sentencing, 5/25/17, at 25; Sentencing Order, 5/25/17, at 2-3. Both terms of imprisonment exceed the aggravated range of the sentencing guidelines. N.T. Sentencing, 5/25/17, at 25; Sentencing Order, 5/25/17, at 1.

On June 2, 2017, Appellant filed a timely post-sentence motion, where he claimed that "[t]he total sentence of [six] to 12 years is excessive and disproportionate to [Appellant's] two crimes, which were part of one criminal episode; and therefore the sentence is unreasonable." Appellant's Motion to Reconsider Sentence, 6/2/17, at 1. Appellant requested that the trial court vacate his sentence and "resentence him in compliance with Pennsylvania sentencing norms." *Id.* at 2 (some internal capitalization omitted). The trial court denied this motion on June 6, 2017, without holding a hearing. Trial Court Order, 6/6/17, at 1.

Further, on Monday, June 5, 2017, Appellant filed a timely "Supplemental Post-Sentence Motion to Reconsider Sentence" (hereinafter "Supplemental Post-Sentence Motion"), where he claimed that the trial court sentenced him under the mistaken belief that his prior record score was higher than it really was. Appellant's Supplemental Post-Sentence Motion, 6/5/17, at 1-2. In response, the trial court issued a rule upon the Commonwealth to show cause as to why Appellant was not entitled to relief on his Supplemental Post-Sentence Motion. Trial Court Order, 6/12/17, at 1. However, prior to the hearing on the matter, Appellant withdrew his Supplemental Post-

Sentence Motion. The trial court's subsequent order, which memorialized Appellant's withdrawal, declared:

> The issue is that the prior record score, which the [trial] court relied upon in the sentencing guidelines, as prepared by the Commonwealth, was in fact correct; and upon confirmation of that, [Appellant] withdraws with prejudice his [Supplemental Post-Sentence Motion].

Trial Court Order, 8/25/17, at 1 (some internal capitalization omitted).

Appellant filed a timely notice of appeal from the trial court's order that memorialized the withdrawal of his Supplemental Post-Sentence Motion. *See* Pa.R.Crim.P. 720(A)(2)(c) ("If the defendant files a timely post-sentence motion, the notice of appeal shall be filed . . . within 30 days of the entry of the order memorializing the withdrawal in cases in which the defendant withdraws the motion"). Appellant raises two claims on appeal:

> [1.] Whether the evidence at trial was insufficient to prove that [Appellant] possessed a controlled substance when no controlled substance could be seen on the surveillance video?
>
> [2.] Whether the [trial] court abused its discretion in sentencing when the sentence exceeded the aggravated range of the sentencing guidelines?

Appellant's Brief at 5 (some internal capitalization omitted).

Appellant first claims that the evidence was insufficient to support his PWID conviction. We review Appellant's sufficiency of the evidence claim under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every

- 6 -

element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa. Super. 2008).

According to Appellant, the evidence was insufficient to support his PWID conviction because "it cannot be seen in the [Sheetz surveillance] video that he ever possessed the drugs in question." Appellant's Brief at 11. Although Appellant acknowledges that Ms. Champeno testified that he sold the Decedent heroin, Appellant claims that Ms. Champeno's "testimony alone is not sufficient as she is not a credible witness." *Id.*

Obviously, this claim fails because Ms. Champeno testified that Appellant sold the Decedent heroin and, in this appeal, we must view Ms. Champeno's testimony in the light most favorable to the Commonwealth. Therefore, since Ms. Champeno testified that Appellant sold the Decedent

- 7 -

heroin on the night in question, the evidence is sufficient to support Appellant's PWID conviction.

Second, Appellant claims that the trial court abused its discretion at sentencing. Appellant's Brief at 12. This claim also fails.

"[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Moreover, pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007).

As our Supreme Court has held, the determination of whether a substantial question exists must be done prior to – and be divorced from – the determination of the potential merits of an issue. *Commonwealth v. Tuladziecki*, 522 A.2d 17, 19 (Pa. 1987). If it were otherwise, a challenger

would "in effect obtain[] an appeal as of right from the discretionary aspects of a sentence" – a result that would violate statutory law. *Id.*

Within Appellant's Rule 2119(f) statement, Appellant claims that the trial court abused its discretion by: 1) "imposing a sentence above the aggravated range of the guidelines consecutively to all other sentences without stating adequate reasons on the record and without acknowledging the court was aware of the guidelines;" 2) "failing to consider necessary sentencing factors, including mitigating factors;" and, 3) imposing a sentence that, overall, "was excessive." Appellant's Brief at 10. However, Appellant did not raise the first two claims in his post-sentence motion. *See* Appellant's Motion to Reconsider Sentence, 6/2/17, at 1 ("[t]he total sentence of [six] to 12 years is excessive and disproportionate to [Appellant's] two crimes, which were part of one criminal episode; and therefore the sentence is unreasonable"). Hence, Appellant's first two numbered claims are waived, as Appellant failed to include the claims in his post-sentence motion. *See Commonwealth v. Griffin*, 65 A.3d 932, 935-936 (Pa. Super. 2013) ("issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived") (internal quotations, citations, emphasis, and corrections omitted).

Appellant's final challenge to the discretionary aspects of his sentence –
that the trial court erred when it imposed a sentence that, overall, was
excessive – is waived because Appellant did not include any such claim in the
argument section of his brief. ***See*** Appellant's Brief at 13-14; ***see***
***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015) (holding
that, where the appellant "fails to expand upon [a] claim in the argument
section of his brief … the claim is waived"). Moreover, even if the claim were
not waived, the claim does not raise a substantial question that Appellant's
sentence is inappropriate under the Sentencing Code.

Generally, for an appellant to raise a substantial question that his
sentence is inappropriate under the Sentencing Code, the appellant must
"advance a colorable argument that the trial judge's actions were: (1)
inconsistent with a specific provision of the Sentencing Code; or (2) contrary
to the fundamental norms which underlie the sentencing process."
***Commonwealth v. McKiel***, 629 A.2d 1012, 1013 (Pa. Super. 1993);
***Commonwealth v. Goggins***, 748 A.2d 721, 726 (Pa. Super. 2000) (*en*
*banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000).

As this Court has held:

> the imposition of consecutive rather than concurrent
> sentences lies within the sound discretion of the sentencing
> court. Long standing precedent of this Court recognizes that
> 42 Pa.C.S.A. § 9721 affords the sentencing court discretion
> to impose its sentence concurrently or consecutively to other
> sentences being imposed at the same time or to sentences
> already imposed. A challenge to the imposition of
> consecutive rather than concurrent sentences does not

present a substantial question regarding the discretionary aspects of sentence. We see no reason why a defendant should be afforded a volume discount for his crimes by having all sentences run concurrently.

However, we have recognized that a sentence can be so manifestly excessive in extreme circumstances that it may create a substantial question. When determining whether a substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case.

*Commonwealth v. Zirkle*, 107 A.3d 127, 133-134 (Pa. Super. 2014) (internal quotations, citations, and corrections omitted); *see also Commonwealth v. Radecki*, 180 A.3d 441, 468-469 (Pa. Super. 2018) ("[w]e consistently have recognized that excessiveness claims premised on imposition of consecutive sentences do not raise a substantial question for our review").

In this case, Appellant's aggregate sentence of six to 12 years' imprisonment does not "appear[ on] its face to be[] an excessive level in light of the criminal conduct in this case." *Id.* Therefore, Appellant has not raised a substantial question and we may not reach the merits of Appellant's sentencing claim on appeal.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge McLaughlin joins.

Judge Strassburger files a Concurring Memorandum.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/19/2018